# United States Court of Appeals
# for the Eighth Circuit

| | |
|---|---|
| OLIN CORPORATION,<br><br>    *Petitioner*,<br><br>    v.<br><br>UNITED STATES ENVIRONMENTAL<br>PROTECTION AGENCY, ET AL.,<br><br>    *Respondents*. | No. 25-1014 and<br>the consolidated cases |

## OLIN'S OPPOSITION TO EXTENDING THE ABEYANCE

Respondents ("EPA") have asked this Court for a 120-day abeyance, with no real justification. Doc. 5485364 ("Abeyance Mot."). There are compliance obligations in place already, and more are looming on June 16, 2025, before the abeyance would even have ended. And EPA's only upcoming obligation is simply to provide the administrative record for the rule it already adopted, a ministerial task that should not require decisions by policymakers. Holding this case in abeyance is both harmful and unjustified. In more detail:

1. This case is a challenge to EPA's rule restricting activities with carbon tetrachloride under the Toxic Substances Control Act ("TSCA"), 89 Fed. Reg. 103,512 (Dec. 18, 2024).

2. The rule became effective on January 17, 2024. 89 Fed. Reg. at 103,513 (identifying effective date). Various obligations and restrictions under the rule require compliance on dates ranging from February 2025 through 2027. After February 18, 2025, a manufacturer of carbon tetrachloride is required to provide certain notices to any purchasers. 40 C.F.R. § 751.711. After June 16, 2025, any company using this substance (aside from federal agencies and companies working on federal contracts) must ensure its workers do not have any skin contact with the substance. *Id.* § 751.707(f)(3). Compliance with various restrictions on laboratory use of carbon tetrachloride is required in December 2025. *Id.* § 751.709. From June 2026, a company using carbon tetrachloride (except a federal agency or contractor) must prevent workplace exposures above a severely restricted level of 30 parts per billion. *Id.* §§ 751.701, 751.707(b).

3. TSCA gives exclusive jurisdiction for a challenge to such a rule to the courts of appeals. 15 U.S.C. § 2618(1)(A). A petition must be filed within 60 days of the promulgation of the rule. *Id.* Olin promptly filed this action on January 2, 2025.

4. On January 22, 2025, the Judicial Panel on Multidistrict Litigation Panel ordered the consolidation of seven petitions from other circuits into this case. Doc. 5478305. A day later all but two were transferred. On January 24, the Clerk of the Court ordered the case held in abeyance "until all cases listed in the Panel's

consolidation order have been received and docketed in this court." Doc. 5478315. The next-to-last arrived on January 31, and the last was received and docketed on February 7, 2025.

5. On February 11, the Court ordered the parties to develop a proposed briefing schedule. Doc. 5484565.

6. Instead, on February 12, 2025, EPA moved to "extend the abeyance in this matter for 120 days." Abeyance Mot. ¶ 6. The requested extension is moot, because the abeyance had ended on February 7 upon the occurrence of the condition that the Clerk's order had set (namely, the transfer and docketing of the last case from the Panel's consolidation order).

7. EPA's motion is also unjustified and should be denied. All EPA wants, it says, is an opportunity to "brief new agency leadership . . . so they can determine what, if any, action is necessary." Abeyance Mot. ¶ 5. EPA can undertake that briefing as things are; nothing in this case stands as an obstacle. EPA's only pending deadlines are to confer on a joint briefing schedule and to provide the administrative record. Neither task requires any substantive position from EPA, or any particular input from new decisionmakers. The record was closed no later than the publication of the rule last December; an administrative record cannot contain materials from after the agency's action. The compilation of that record is a ministerial process, not

a matter of policy. EPA's need to brief its new leadership is no justification for delaying the administrative record.

8. EPA invoked the principle that a court has broad discretion to stay its proceedings. Abeyance Mot. ¶ 7. But that discretion is not unfettered it "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936).

9. EPA offered no argument regarding those "competing interests." *Landis* held that "the suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." 299 U.S. at 255. The damage here is not just a "fair possibility," it is a certainty. Olin, like other manufacturers of carbon tetrachloride, has compliance obligations now. Users (Olin's customers, and Olin itself) have additional compliance obligations coming in just a few months. And more restrictions will require compliance over the coming year, as set forth above.

10. Olin is entitled to prompt adjudication of its claims that the Carbon Tetrachloride Rule is unlawful and irrational.

11. Meanwhile, to justify delaying that adjudication, EPA does not identify any "hardship or inequity" at all. Instead, it says simply that it wants to give new leadership time to assess whether they will want to reconsider the Rule. Abeyance

Mot. ¶¶ 7–9.  But the new leadership can make that assessment without an abeyance. There is no upcoming filing by EPA in which it would need to take a position, and not even a schedule for EPA's answer brief.  EPA is not called to state a position in the immediate future on which it would need its leadership's review.

12. EPA notes that agencies can revise their rules.  Abeyance Mot. ¶ 8.  That is true of every rule in litigation, so cannot be enough to justify holding the case in abeyance.  EPA cites cases about agencies that "seek[] to reconsider [their] action[s]," Abeyance Mot. ¶ 10 (quoting *Anchor Line Ltd. v. Fed. Mar. Comm'n*, 299 F.2d 124, 125 (D.C. Cir. 1962)).  But EPA is distinctly not seeking reconsideration here.  EPA suggests only that it "could take further action" like that, once its new leadership has reviewed the situation.  This is well short of suggesting that EPA actually does plan to revisit the Carbon Tetrachloride Rule.[1]

13. EPA notes multiple cases in which courts, including this one, have granted abeyances at the change in presidential administration.  Abeyance Mot., ¶ 7.  In *U.S. WeChat Users All. v. Biden*, No. 20-16908 (9th Cir. Feb. 11, 2021)*; Denka*

---

[1] EPA quotes *Anchor Line Ltd. v. Fed. Maritime Comm'n*, 299 F.2d 124 (D.C. Cir. 1962), as saying an agency *should* seek an abeyance.  Abeyance Mot., ¶ 8.  In *Anchor Line*, the agency had reconsidered its decision while litigation was pending, and the Court held that reconsideration decision was appropriate for judicial review in the circumstances.  299 F.2d at 125.  In passing, the court suggested that when the agency planned to reconsider its action under review, it should have at least asked for an abeyance of the litigation first.  Nothing about that passing remark suggests a court should hold a case in abeyance just because an agency wants to contemplate whether it *might* want to reconsider.

*Performance Elastomer, LLC v. EPA*, No. 24-60351 (5th Cir. Feb. 7, 2025); and *West Virginia v. EPA*, No. 15-1363 (D.C. Cir. Apr. 28, 2017), the government sought abeyances with the consent of the petitioners involved. *Landis* calls for more care when a party opposes a stay because of the harm it would cause.

14. In *American Fuel & Petrochemical Manufacturers v. EPA*, No. 19-1124 (D.C. Cir. Feb. 5, 2021), the D.C. Circuit did not hold the case in abeyance, but instead just rescheduled, by seven weeks (far less than the four-month abeyance EPA obtained here) an oral argument that was pending for just three weeks after EPA filed its motion.

15. The D.C. Circuit is no longer so willing to postpone its adjudication. In *United Steel, Paper & Forestry, Rubber, Manufacturing, Energy, Allied Industrial & Service Workers International Union v. EPA*, No. 24-1151, an oral argument is scheduled for March 21. On February 5, 2025, EPA moved the Court to postpone the argument and hold the case in abeyance. Motion, Doc. 2098875, No. 24-1151 (D.C. Cir. Feb. 5, 2025). Certain petitioners opposed that abeyance on grounds that the questions of statutory interpretation presented there are matters for judicial decision anyway, under *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024); and that agency reconsideration of the relevant issues will not eliminate the need for judicial resolution, but simply delay it. Labor Petitioners' Opposition, Doc. 2099993, p.5–7, No. 24-1151 (D.C. Cir. Feb. 11, 2025). The D.C. Circuit then

refused to pause that litigation. Order, Doc. 2100857, No. 24-1151 (D.C. Cir. Feb. 14, 2025).

16. In *American Petroleum Institute v. EPA*, No. 13-1108 (D.C. Cir. May 18, 2017), EPA's motion for abeyance explained that EPA had published advance notice of forthcoming rulemaking (a Federal Register publication submitted as an exhibit to EPA's notice) to reconsider the rule at issue. No. 13-1108, Doc. 1670157, ¶ 4 (D.C. Cir. Apr. 7, 2017). EPA has not made any such commitment here.

17. Finally, EPA suggests that it "could take further action that may obviate the need for judicial resolution of some or all of the disputed issues." Abeyance Mot. ¶ 10. "Could" is a mere hypothetical, without a hint that EPA actually intends to take any pertinent action. Regardless, even a complete reversal by EPA, a decision to revoke the Carbon Tetrachloride Rule, would not obviate the need for judicial resolution. Compliance obligations are in place, and more will be required before EPA's proposed abeyance ends. A rescission or revocation of the Rule would not change the fact that the Rule has been in force. A company that has had compliance errors is exposed to potential penalties of nearly $50,000 per violation. 15 U.S.C. § 2615(a); 40 C.F.R. § 19.4 (listing adjustments for inflation). A company with current compliance problems can be subject to private actions—brought by private parties, not by the government—in which it could have to pay the attorney fees if it loses. 15 U.S.C. § 2619(a), (c)(2). Thus, EPA's internal review

of the Rule cannot end the risk to Olin and to its customers. Only the relief requested from this Court can do that. EPA's suggestion that it could "obviate the need for judicial resolution" is incorrect.

For these reasons, the Court should deny EPA's motion for an extended abeyance, and the case should proceed in the normal course.

February 24, 2025

Respectfully submitted,

/s/ Keith Bradley
KEITH BRADLEY
KAYLA MARIE MENDEZ
717 17th Street, Suite 1825
Denver, CO 80202
(303) 830-1776
keith.bradley@squirepb.com

SAMUEL B. BALLINGRUD
2550 M Street, NW
Washington, DC 20037

SQUIRE PATTON BOGGS (US) LLP

W. CAFFEY NORMAN
2550 M Street, NW
Washington, D.C. 20037
(202) 460-9495
caffeynorman@outlook.com

NORMAN LAW & POLICY PLLC

*Counsel for Olin Corporation*

CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B), excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 1,704 words, as determined by the word-count function of Microsoft Office 365.

This document further complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Office 365 in 14-point Times New Roman Font.

*/s/ Keith Bradley*
Keith Bradley

*Counsel for Olin Corporation*