# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

| | |
|---|---|
| OLIN CORPORATION,<br><br>*Petitioner*,<br><br>v.<br><br>U.S. ENVIRONMENTAL PROTECTION AGENCY, ET AL.,<br><br>*Respondents*. | Case No. 25-1014 and the consolidated cases |

**UNOPPOSED MOTION TO HOLD CASE IN ABEYANCE**

Respondents the U.S. Environmental Protection Agency and its Administrator, Lee Zeldin (collectively "EPA") respectfully request that the Court abate this matter, including the September 12, 2025, briefing proposal deadline. EPA has decided to reconsider the challenged rulemaking, and it will preserve judicial and party resources to hold proceedings in these cases in abeyance (including the briefing proposal deadline) while EPA completes its reconsideration proceedings. During this period, EPA proposes filing status reports with the Court every 90 days. Counsel for EPA was informed that:

– American Chemistry Council and Georgia Chemistry Council (No. 25-1132) consent to the abeyance;

1

– Labor Petitioners (United Steel, Paper and Forestry, Rubber Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO (No. 25-1137) and International Union, United Automobile, Aerospace & Agricultural Implement Workers of America (No. 25-1138)) and Ohio Chemistry Technology Council (No. 25-1140) do not object;

– Olin Corporation (No. 25-1014), Ohio Environmental Council and Louisiana Environmental Action Network (No. 25-1139), Sierra Club (No. 25-1175), and Texas Chemistry Council (No. 25-1266) do not oppose.

In support of this request, EPA states the following:

1. EPA promulgated the challenged rulemaking entitled "Carbon Tetrachloride (CTC); Regulation under the Toxic Substances Control Act (TSCA)" 89 Fed. Reg. 103512 (Dec. 18, 2024) ("CTC Rule") in late 2024. Eight petitions for review of the CTC Rule were filed in seven United States Courts of Appeals and were eventually consolidated in this Court by order of the Judicial Panel on Multidistrict Litigation. *See* ECF No. 5478305.

2. This matter was effectively in abeyance from late January until early September of this year. Initially, the Clerk abated proceedings to allow time for all eight petitions to be docketed in this Court. ECF No. 5478315. The final petition was docketed on February 7th, *see Tex. Chemistry Council v. EPA*, No. 25-1266 (8th Cir.), ECF No. 21-3, and on February 12th EPA moved for a 120-day

abeyance to allow new Agency leadership time to review the rulemaking. ECF No. 5485364. The Court granted EPA's request in part, abating proceedings until June 2nd. ECF No. 5502849. On June 5th, EPA requested an additional abeyance until September 2, 2025, to give the Agency time to complete its review of the CTC Rule. ECF No. 5524245. That request was granted. ECF No. 5541621.

3. Having completed its review, EPA has decided to reconsider the CTC Rule through notice and comment rulemaking. As described in the attached declaration from Dr. Nancy Beck, Principal Deputy Administrator for the Office of Chemical Safety and Pollution Prevention, EPA intends to engage with stakeholders early in the reconsideration process and issue a proposed rule seeking public comment on any potential changes to the CTC Rule. Beck Decl. ¶ 9. EPA estimates that this entire process, including any regulatory changes, will take 18-24 months. *Id.* (also noting that "EPA expects to issue a proposed rule within 7-10 months").

4. Given the timeframe necessary to complete EPA's planned reconsideration of the CTC Rule, EPA respectfully requests that the Court place these consolidated cases into abeyance pending completion of EPA's reconsideration proceedings. EPA also proposes submitting status reports updating the Court on the progress of the reconsideration every 90 days.

3

5. This court has "broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *Cottrell v. Duke*, 737 F.3d 1238, 1248 (8th Cir. 2013). An abeyance is prudent "if the public welfare or convenience will thereby be promoted." *Landis*, 299 U.S. at 256.

6. Courts have long recognized that agencies may generally reassess and, if appropriate, revise their past decisions. *See, e.g.*, *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 42 (1983) ("[R]egulatory agencies do not establish rules of conduct to last forever [and] an agency must be given ample latitude to adapt their rules and policies to the demands of changing circumstances.") (citations omitted); *Nat'l Ass'n of Home Builders v. EPA*, 682 F.3d 1032, 1038, 1043 (D.C. Cir. 2012) (explaining that an agency's "reevaluation of which policy would be better in light of the facts" is "well within" its discretion) (citation omitted).

7. Courts, including this one, have also recognized that abeyance can be the appropriate course when an agency decides to reconsider a rulemaking challenged in litigation. *See, e.g.,* Order, *Sw. Elec. Power Co. v. EPA*, No. 24-2123 (8th Cir. Aug. 27, 2025), ECF No. 5551838 (granting abeyance following EPA's decision to reconsider the challenged rulemaking); Order at 1-2, *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union*

4

*v. EPA*, No. 24-1151 (D.C. Cir. Apr. 30, 2025), ECF No. 2113775; Order at 6-7, *Utah v. EPA*, No. 16-9541 (10th Cir. Sep. 11, 2017), ECF No. 10496767; *Cf.* Order at 2, *EDF Renewables, Inc. v. FERC*, No. 23-1520 (8th Cir. Apr. 18, 2023), ECF No. 5266389 (abating proceedings pending agency consideration of petitions for rehearing); Order at 6, *Iowa v. SEC*, No. 24-1522 (8th Cir. Apr. 24, 2025), ECF No. 5509839 (abating proceedings and ordering the SEC to file a report with the Court concerning whether it "intends to review or reconsider the rules at issue in this case").

8. Good cause exists for this abeyance request. This matter is still in its early stages, so abeyance now would preserve party and judicial resources. *See Utah v. EPA*, No. 23-1157, 2025 WL 1354371, at *2 (D.C. Cir. May 2, 2025) ("[T]he primary reason for holding a case in abeyance is to promote judicial economy."). EPA's reconsideration of the CTC Rule could obviate the need for judicial review of some or all of the issues raised by these petitions. *Cf. Ctr. for Biological Diversity v. EPA*, 56 F.4th 55, 71 (D.C. Cir. 2022) (noting that the court "routinely stay[s] [its] hand when parties identify developments that are likely to render judicial resolution unnecessary"). And even if certain issues remain, a new CTC rulemaking would be supported by a new administrative record, informed by public comment and stakeholder input throughout the reconsideration process—so any record-based challenges to the CTC Rule may need to be litigated on that new

5

record. Thus, rather than diving into merits briefing now, it makes sense to abate proceedings, allow EPA's reconsideration of the CTC Rule to conclude, and then for the parties to assess next steps.

9. For the reasons above, EPA respectfully requests that the Court place these consolidated cases in abeyance, with status reports due every 90 days.

Respectfully submitted,

DATED: September 12, 2025

ADAM R.F. GUSTAFSON
*Acting Assistant Attorney General*

*Of Counsel:*
ELIZABETH THALER
DEREK GILLIAM
   Office of the General Counsel
   U.S. Environmental Protection Agency
   Washington, D.C.

/s/ *Zoe B. Palenik*
ZOE B. PALENIK
   U.S. Department of Justice
   Environmental Defense Section
   P.O. Box 7611
   Washington, D.C. 20044
   (202) 353-5625
   zoe.palenik@usdoj.gov

# CERTIFICATE OF COMPLIANCE

This document complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 1,091 words. This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

DATED: September 12, 2025

*/s/ Zoe B. Palenik*
ZOE B. PALENIK

## CERTIFICATE OF SERVICE

I hereby certify that on September 12, 2025, I filed the foregoing Unopposed Motion to Hold Case in Abeyance with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Zoe B. Palenik*
ZOE B. PALENIK

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

| | |
|---|---|
| OLIN CORPORATION,<br><br>*Petitioner*,<br><br>v.<br><br>U.S. ENVIRONMENTAL PROTECTION AGENCY, ET AL.,<br><br>*Respondents*. | Case No. 25-1014 and the consolidated cases |

## DECLARATION IN SUPPORT OF MOTION TO HOLD CASE IN ABEYANCE

1. I, Nancy B. Beck, declare under penalty of perjury that the following statements are true and correct to the best of my knowledge and belief and that they are based upon my personal knowledge, information contained in the records of the United States Environmental Protection Agency ("EPA" or "the Agency"), or information supplied to me by EPA employees under my supervision at EPA Headquarters. *See* 28 U.S.C. § 1746.

2. I am the Principal Deputy Assistant Administrator for the Office of Chemical Safety and Pollution Prevention ("OCSPP") within EPA. I have held this position since February of 2025; however, I held this position previously from December 2018 to January 2021, during which time I also served on detail as

Senior Advisor to the Administrator of the Office of Information and Regulatory Affairs in the Office of Management and Budget from April 2020 to January 2021. Prior to rejoining EPA this year, I worked for a law firm as their Director of Regulatory Science. I hold a B.S. in Microbiology from Cornell University and an M.S. and Ph. D. in Environmental Health from the University of Washington.

3. The Office of Pollution Prevention and Toxics ("OPPT") in OCSPP is responsible for the administrative development of the regulation entitled, "Carbon Tetrachloride (CTC); Regulation Under the Toxic Substances Control Act (TSCA)," 89 Fed. Reg. 103512 (Dec. 18, 2024) ("CTC Rule"), as well as for the underlying CTC risk evaluation and associated determination of unreasonable risk upon which the rule is based.

4. Following the change in administration, on February 12, 2025, Respondents United States Environmental Protection Agency and Administrator Lee Zeldin ("EPA") moved to hold these consolidated cases in abeyance for 120 days to allow new agency leadership time to review the underlying rule that is the subject of the petitions for review. The Court granted EPA's request in part, abating proceedings until June 2, 2025. On June 5, 2025, EPA filed a motion to hold these consolidated cases in abeyance until September 2, 2025, to allow Agency leadership to complete its review of the underlying rule. This Court granted that motion on July 25, 2025.

5. OCSPP has now completed that review and determined that the CTC Rule at issue in these consolidated petitions for review should be reconsidered through further rulemaking. Accordingly, EPA, by and through OCSPP, believes that further abeyance of this action for Agency reconsideration of the challenged rule is appropriate.

6. This declaration is filed in support of EPA's motion for abeyance. The purpose of this declaration is to explain the considerations informing EPA's request for abeyance and EPA's rationale for requesting abeyance.

7. Statutory Background

   a. The Toxic Substances Control Act ("TSCA") requires EPA to review chemical substances in commerce to determine whether they "present[] an unreasonable risk of injury to health or the environment, without consideration of costs or other nonrisk factors, including an unreasonable risk to a potentially exposed or susceptible subpopulation identified as relevant to the risk evaluation by the Administrator, under the conditions of use." 15 U.S.C. § 2605(b)(4)(A).

   b. In conducting a risk evaluation, TSCA requires, among other things, that EPA "integrate and assess available information on hazards and exposures for the conditions of use of the chemical substance" to determine whether its use presents an unreasonable risk. *Id.* § 2605(b)(4)(F)(i). EPA conducts peer review activities on TSCA risk evaluations consistent with applicable peer

3

review policies, procedures, and methods, *see id.* § 2625(h), (o)(1)–(2), and must publish draft risk evaluations for public comment, *id.* § 2605(b)(4)(H). EPA must respond to peer review analysis and public comments, including any data received, when finalizing the risk evaluation.

  c. A determination of unreasonable risk triggers the next step in the process, risk management. *Id.* § 2605(a), (c). During the risk management phase, EPA goes through a public rulemaking process, selecting among various risk management tools laid out in section 2605(a) to "apply one or more . . . requirements . . . to the extent necessary so that the chemical substance . . . no longer presents" the unreasonable risk of injury to health or the environment, under the conditions of use, determined in the risk evaluation. *Id.* § 2605(a); *see also id.* § 2605(b)(4)(A) (cross-referenced in § 2605(a)).

  d. In "selecting among prohibitions and other restrictions," section 2605(c) requires EPA to "factor in, to the extent practicable," several considerations, including the chemical substance's effects on health and the environment, the magnitude of exposure to the chemical substance, its benefits for various uses, and "the reasonably ascertainable economic consequences of the rule." *Id.* § 2605(c)(2)(A)-(B). Additionally, in deciding whether to prohibit or restrict a condition of use of a chemical substance (and in setting an appropriate transition period, *id.* § 2605(d)), EPA must "consider, to the extent practicable,

4

whether technically and economically feasible alternatives that benefit health or the environment, compared to the use so proposed to be prohibited or restricted, will be reasonably available as a substitute when the proposed prohibition or other restriction takes effect." *Id.* § 2605(c)(2)(C).

  e. Both the risk evaluation and subsequent risk management rulemaking must also meet statutory requirements that the actions be based on the best available science, the weight of the scientific evidence, and "information relating to a chemical substance or mixture, including hazard and exposure information, under the conditions of use, that is reasonably available to the Administrator." *Id.* § 2625(h), (i), (k).

  8. During abeyance, OCSPP intends to reconsider the CTC Rule through notice-and-comment rulemaking, including but not limited to the use of the Existing Chemical Exposure Limit (ECEL) of 0.03 ppm promulgated as part of the Workplace Chemical Protection Program for CTC, to ensure that the rule is implementable to protect workers consistent with statutory requirements.

  9. OCSPP intends to solicit early stakeholder input, issue a proposed rule seeking public comment on potential changes to the CTC Rule, and finalize a new rule based on public input if EPA determines that changes are warranted. EPA expects to issue a proposed rule within 7-10 months. EPA expects this entire

5

process, including the finalization of any regulatory changes, to take between 18-24 months.

I declare under penalty of perjury that the foregoing is true and correct.

_____

NANCY BECK
Digitally signed by NANCY BECK
Date: 2025.09.12 10:27:09 -04'00'

Nancy B. Beck, Ph.D.
Principal Deputy Assistant Administrator
Office of Chemical Safety and Pollution Prevention
U.S. Environmental Protection Agency

6